# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ANTONIO JONES,

    Plaintiff,

v.                                             Case No. 20-CV-746

DYLON RADTKE,
JON E. LITSCHER,
SGT. SEGERSTRUMN[1],
SGT. SHERLAND,
SGT. REYES,
SGT. MCDONALD,
LT. COLE,
CO DEGRAVES[2], and
CHEF MARSHA,

    Defendants.

## SCREENING ORDER

    Plaintiff Antonio Jones, an inmate confined at Green Bay Correctional Institution, filed a *pro se* complaint under 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights. This matter is before me on Jones' motion for leave to proceed without prepaying the filing fee and for screening his complaint.

    The court has jurisdiction to resolve Jones' motion to proceed without prepaying the filing fee and to screen the complaint in light of Jones' consent to the

---

[1] Jones spells this defendant's name "Segerstrum" elsewhere in his complaint.
[2] Jones spells this defendant's name "Degrave" elsewhere in his complaint.

full jurisdiction of a magistrate judge and the Wisconsin Department of Justice's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Wisconsin Department of Justice and this court.

1. *Motion for Leave to Proceed without Prepaying the Filing Fee*

The Prison Litigation Reform Act (PLRA) applies to this case because Jones was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On May 26, 2020, I ordered Jones to pay an initial partial filing fee of $3.80. (ECF No. 8.) The day after the fee was due, Jones filed a motion to extend his deadline to pay the fee. (ECF No. 9.) Jones paid the fee two days later, on June 19, 2020. I will grant Jones' motion for an extension of time and his motion for leave to proceed without prepaying the filing fee. He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

2. *Screening the Complaint*

    *2.1 Federal Screening Standard*

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental

2

entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes *pro se* complaints liberally and holds them to a less stringent standard than

3

pleadings drafted by lawyers. *Cesal,* 851 F.3d at 720 (citing *Perez v. Fenoglio,* 792 F.3d 768, 776 (7th Cir. 2015)).

*2.2 Jones' Allegations*

Jones alleges that, on August 31, 2019, after he moved into a new cell, he plugged in an extension cord and his fan, at which time a shower of sparks shot out from the socket, slightly burning his middle finger. According to Jones, the power was knocked out in his and other cells. Efforts made on and off over the next week to fix the problem were unsuccessful. Jones asserts that he complained to defendants Sherland, Cole, Reyes, Segerstrum, and McDonald that his light was not working and that his outlet was occasionally sparking, but they failed to fix the problem or move him to a different cell. A little more than a week after the initial incident, Jones was moved to a different cell.

Next, Jones alleges that, on September 7, 2019, while working in the kitchen, he accidentally spilled some salsa on the floor. Jones explains that he retrieved a mop and bucket to clean up the mess. In the course of returning the mop and bucket to the janitor's closet, he slipped and fell, hitting his hip. Jones says he laid there for a bit until the pain subsided. When he exited the janitor's closet, he walked with a slight limp.

According to Jones, when he passed defendant Marsha, who works as a chef in the kitchen, she began to badger him with questions about why he had stayed in the janitor's closet for so long and why he was walking with a limp. Jones explains that he has learned from past experiences with her not to engage, so he largely ignored

4

her questions. Marsha allegedly began to accuse Jones having stolen something. Jones told her he had not stolen anything, and he asked her to leave him alone.

Marsha allegedly persisted in her accusations, eventually enlisting the help of defendant correctional officer Degrave, who Jones says is Marsha's ex-boyfriend. Degrave also allegedly asked Jones what he had on him. When Jones told them he had nothing, they threatened him with a strip search, telling him he had nothing to fear if he had not taken anything. Jones allegedly told them that, if they had him strip searched, he would file a complaint.

Jones asserts that, after he returned to his work area, a rookie correctional officer (who is not a defendant) approached Jones and told him he had to pat search him. Jones asserts that Jenny (another chef who is not a defendant) told the officer to make Jones lift up the front of his shirt. After the officer failed to find anything, he allegedly apologized to Jones. Jones asserts that, about two minutes later, Marsha and Degrave again approached him. According to Jones, Marsha said, "Where did you put it?" (ECF No. 1 at 8.) When Jones again told her he had not taken anything, she responded, "We'll see after your strip search." (*Id.*) She then allegedly chuckled, turned to Degrave and said, "Strip search the asshole." (*Id.*) Degrave then called and requested that an officer be sent to strip search Jones.

Jones states that an officer (who is not a defendant) strip searched him and another officer (who is also not a defendant) searched through his clothes. After they found nothing, Jones returned to the kitchen to finish his shift. Jones alleges that he

5

passed by Jenny and Marsha, at which time Marsha laughed at him before she left to go home.

Jones asserts that other inmates informed him that, while he was being searched, Jenny and Marsha searched his work area and throughout the kitchen. Inmates told him that, when Marsha thought no one was looking, she took some packets of peanut butter from her pocket to place under the ice machine, but when she saw an inmate watching her, she put the packets back in her pocket. Jones asserts that he filed a grievance that night.

The next day, Jones asserts that he and another inmate decided to divide their tasks in order complete them more efficiently. Degrave allegedly approached Jones and asked him if he was doing his assigned job. Jones informed Degrave that it was being taken care of. Jones and the other inmate completed their assigned tasks early and asked another inmate if he needed help. After he declined their offer, Jones and the other inmate talked amongst themselves. Jones states that Marsha and Degrave watched them talking, then left. The shift ended shortly thereafter, and the inmates were taken back to their cells.

Jones asserts that he received a ticket from Degrave the next day for refusing to work and disobeying an order. Later that same day, the inmate complaint examiner interviewed him about the grievance he had filed the previous day. She reminded him of the penalty for lying about staff and asked him if he wanted to continue with his grievance. He said he did. The next day, he was not allowed to return to work.

Later that week, Jones asserts that a sergeant (who is not a defendant) read him the ticket Degrave had given him and asked him if he wanted to take thirty days loss of recreation as a penalty. Jones declined, explaining that he had not refused to work and had not disobeyed an order because no order was given. Jones asserts that the ticket was reviewed, he was found guilty on all counts and was given fifteen hours loss of pay. Jones asserts that the appeal was denied on all levels.

*2.3 Analysis*

Federal Rule of Civil Procedure 20 prohibits a plaintiff from asserting unrelated claims against different groups of defendants in the same lawsuit. The rule allows a plaintiff to join multiple defendants in a single lawsuit only if he asserts at least one claim against *all* the defendants that arises out of the same event or incident and presents questions of law or fact that are common to all the defendants. *Balli v. Wisconsin Dept. of Corrections*, No. 10-cv-67, 2010 WL 924886, *1 (W.D. Wis. Mar. 9, 2010) (citing *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)).

Jones' complaint violates Rule 20. His claims against Segerstrum, Sherland, Reyes, McDonald, and Cole are unrelated to his claims against Degrave and Marsha because the claims against these two sets of defendants do not arise out of the same event or incident, nor do they present questions of law or fact that are common to all the defendants. The Court of Appeals for the Seventh Circuit has instructed that, when a complaint violates Rules 20, the court must either sever the action into separate lawsuits or dismiss the improperly joined defendants. *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011) (citing Fed. R. Civ. P. 21).

7

For the reasons explained below, I will allow Jones to proceed against Degrave and Marsha in this case. I will dismiss Segerstrum, Sherland, Reyes, McDonald, and Cole as improperly joined. *See* Fed. R. Civ. P. 20; Fed. R. Civ. P. 21 ("[T]he court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.") If Jones wants to pursue his claims against Segerstrum, Sherland, Reyes, McDonald, and Cole, he must do so in a separate case. He will be required to pay a separate filing fee (or seek leave to proceed without prepaying the filing fee), and any complaint Jones files will then be screened to determine whether he states cognizable claims. *See* 28 U.S.C. § 1915A.

I will also dismiss Dylon Radtke (the warden at Jones' institution) and John Litscher (former Department of Corrections Secretary). Under § 1983, a supervisor is not liable for the misconduct of a subordinate. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). The only time a supervisor will be liable for a subordinate's misconduct is if the supervisor directs or consents to the misconduct. For example, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye" for fear of what they might see. *Id.* (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)). "[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable." *Jones*, 856 F.2d at 992. Jones explains that he is suing Radtke and Litscher because of their supervisory positions. He makes no allegations suggesting they were personally involved in—or even knew about—the alleged misconduct. Their role as supervisors is not, on its own, enough for Jones to state a claim against them.

8

As to Degrave and Marsha, I will allow Jones to proceed on a claim that they violated the Eighth Amendment when they orchestrated a strip search unrelated to legitimate prison needs to harass and humiliate him. *See Calhoun v. Detella*, 319 F.3d 936, 939-40 (7th Cir. 2003). I also will allow him to proceed on a retaliation claim against Degrave and Marsha based on his allegations that Degrave wrote Jones a ticket because he filed an inmate complaint against him and Marsha in connection with the strip search. Although it is not entirely clear how or whether Marsha was involved in Degrave's decision to write the ticket, construing Jones' allegations liberally, I find that he states a retaliation claim against Marsha.

Finally, Jones does not state a due process claim in connection with being found guilty of the ticket. Jones' allegations about the process he received in connection with the ticket are limited, but it appears that he received notice of the charge against him (the ticket) and a hearing of some sort. He alleges he talked to a sergeant, who offered him a minor penalty in exchange for an admission of guilt. Jones asserts that he declined and that a review of the charges occurred. Thus, it appears that Jones received the procedural protections required by the Constitution. In any event, Jones does not sue anyone in connection with an alleged due process violation. Although Degrave wrote the ticket, Jones does not allege that Degrave was responsible for the hearing or ultimate disposition.

**THEREFORE, IT IS ORDERED** that Jones' motion an extension of time to pay the initial partial filing fee (ECF No. 9) is **GRANTED**.

9

**IT IS FURTHER ORDERED** that Jones' motion for leave to proceed without prepaying the filing fee (ECF No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that, under Rule 21, Sgt. Segerstrumn, Sgt. Sherland, Sgt. Reyes, Sgt. McDonald, and Lt. Cole are **DISMISSED without prejudice** because they are improperly joined in this case pursuant to Rules 20. Jones may pursue his claims against these defendants in a separate case. If he does so, he will have to pay a filing fee (or seek leave to proceed without prepaying the filing fee), and the court will screen his complaint as required by 28 U.S.C. § 1915A.

**IT IS FURTHER ORDERED** that defendants Dylon Radtke and Jon Litscher are **DISMISSED** based on Jones' failure to state a claim against them.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants CO Degraves and Chef Marsha. It is **ORDERED** that, under the informal service agreement, those defendants shall file a responsive pleading to the complaint within 60 days.

**IT IS FURTHER ORDERED** that the agency having custody of Jones shall collect from his institution trust account the $346.20 balance of the filing fee by collecting monthly payments from Jones' prison trust account in an amount equal to 20% of the preceding month's income credited to Jones' trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by

10

Case 2:20-cv-00746-NJ   Filed 07/08/20   Page 10 of 12   Document 10

the case name and number assigned to this case. If Jones is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this order along with his remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Jones is confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[3] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

---

[3] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Jones is further advised that failure to make a timely submission may result in the dismissal of this case for failure to diligently pursue it. In addition, the parties must notify the Clerk of Court of any change of address. Jones is reminded that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. Jones' failure to keep the court advised of his whereabouts may result in the dismissal of this case without further notice.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Jones may find useful in prosecuting his case.

Dated at Milwaukee, Wisconsin, this 8th day of July, 2020.

**BY THE COURT:**

s/*Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge