UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**ANTONIO JONES,**

                     **Plaintiff,**

v.                                               Case No. 20-CV-746

**ARTHUR DEGRAVE,** *et al.,*

                     **Defendants.**

---

DECISION AND ORDER ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Antonio Jones, who is incarcerated at Green Bay Correctional Institution and is representing himself, brings this lawsuit under 42 U.S.C. § 1983. (ECF No. 1.) Jones was allowed to proceed on Eighth Amendment claims against the defendants because they allegedly conducted a strip search without penological justification. The defendants move for summary judgment (ECF No. 33.) For the reasons stated below, the defendants' motion for summary judgment is granted.

### FACTS

*The Parties*

Plaintiff Antonio Jones has been incarcerated at Green Bay Correctional Institution since 2007 and has worked in the kitchen since 2009. (ECF No. 48, ¶ 1.) At all times relevant, defendant Martha Gleason was employed at Green Bay as a Food Service Leader. (*Id.*, ¶ 2; ECF No. 35, ¶ 3.) Defendant Arthur DeGrave started his employment at Green Bay in Food Services in 2015 and became a correctional officer in September 2018. (ECF

No. 48, ¶ 2; ECF No. 35, ¶ 2.) During the relevant time period, DeGrave was a correctional officer. (ECF No. 35, ¶ 2.)

*The September 6, 2019 Incident*

Prior to the September 6, 2019 incident, Jones had a few negative encounters with Gleason, including an instance where Jones felt Gleason made him work while sick and an instance where Gleason allegedly called Jones an "asshole".[1] (ECF No. 43, ¶¶ 7-10.) The defendants dispute much of Jones' characterizations of the interactions but admit that Jones had filed two inmate complaints regarding Gleason's behavior towards Jones in July 2019, prior to the incident on September 6, 2019. (ECF No. 48, ¶¶ 7-10.) Jones also suggests that Gleason and DeGrave had a romantic relationship, and that if Gleason had an issue with an inmate, she would often have DeGrave intervene by creating reasons to discipline the inmate. (ECF No. 43, ¶ 3.) The defendants dispute this characterization. (ECF No. 48, ¶ 3.)

On September 6, 2019, Jones, DeGrave, and Gleason were all working in the kitchen. (ECF No. 35, ¶¶ 4-5.) Towards the end of Jones' shift, Jones states he spilled some salsa and went to the janitor's closet to get a mop to clean up the mess. (ECF No. 48, ¶ 11.) According to Jones, Gleason was under the impression that Jones was not going to clean up the spilled salsa, and when she noticed Jones with the mop, stated, "Oh now you are going to clean it up." (*Id.*, ¶¶ 12-13.) Once Jones was done cleaning up the spill, he returned the mop and bucket to the janitor's closet and in the process of cleaning out the mop he slipped and pulled a muscle in his groin. (*Id.*, ¶ 14.) Jones left the janitor's closet and attempted to

---

[1] Jones submitted declarations from other inmates (ECF Nos. 45, 46) to give context to his encounters with Gleason and to show Gleason had a propensity to be vindictive and to falsely accuse or harass inmates. The court will consider these affidavits where appropriate but recognizes that much of the contents of the affidavits are used to support assertions that are inadmissible hearsay. *See Rait v. Oshkosh Architectural Door Co.*, 99 Fair. Empl. Prac. Cas. (BNA) 1641, 2007 WL 702806, at *1 (citing *Minor v. Ivy Tech State College*, 174 F.3d 855, 856-57 (7th Cir. 1999)).

"walk-off" the injury. (*Id.*, ¶ 15.) Gleason approached Jones and asked him what he was doing in the closet and why was he limping. (*Id.*) It is undisputed that Jones did not explain why he was limping. (ECF No. 35, ¶¶ 21, 22.) According to the defendants, limping is often a sign that an inmate is concealing contraband. (*Id.*, ¶ 18.)

Also, the defendants state the janitor's closet is supposed to always be locked and inmates should have to request access from the security officers and kitchen chefs. (*Id.*, ¶ 16.) Inmates are not supposed to access the closet unsupervised. (*Id.*) The closet contains kitchen items that are prone to inmate theft. (*Id.*)

After Jones refused to answer Gleason's questions about his limp, Gleason informed DeGrave that she saw Jones emerging from the janitor's closet with a limp and she suspected Jones was hiding something in his pants. (*Id.*, ¶ 24.) DeGrave approached Jones and asked Jones if he took something from the kitchen. (*Id.*, ¶¶ 26-27.) Jones denied taking anything, so DeGrave told him that if he did not tell DeGrave what he had, Jones would be patted down. (*Id.*, ¶¶ 28-29.) Jones told DeGrave that if he had him patted down, he would file an inmate complaint against DeGrave. (*Id.*, ¶ 30.) Jones then walked towards the bathroom, and DeGrave states he allowed Jones to go into the bathroom "because Jones was a very argumentative and combative inmate, and, at that moment DeGrave did not know where the other Correctional Officer assigned to the kitchen was. DeGrave deemed it too risky to his safety and the safety of others" to prevent Jones from going into the bathroom. (*Id.*, ¶ 33.)

When Jones came out of the bathroom, DeGrave noticed Jones was no longer limping. (*Id.*, ¶ 34.) DeGrave then confronted Jones again, asking what he had. (*Id.*, ¶ 35.) DeGrave also informed Jones that if he told him what he had, Jones would get only a verbal

3

warning, but if DeGrave had to request a strip-search and something was found, he would issue Jones a conduct report. (*Id.*) Jones once again denied having anything. (*Id.*, ¶ 36.) At that point, DeGrave had another officer (not a defendant) conduct a pat-down search of Jones. (*Id.*, ¶ 38.) Neither DeGrave nor Gleason participated in or were present for the pat-down search. (*Id.*, ¶ 39.)

When the officer conducting the pat-down search did not uncover anything, DeGrave decided to request a strip search. (*Id.*, ¶¶ 40-43.) DeGrave, as a correctional officer, can only request a strip search; it is up to the captain or lieutenant if a strip search is necessary. (*Id.*, ¶ 43.) Gleason has no authority to even request a strip search and was not involved in DeGrave's decision to request one. (*Id.*, ¶ 44.)

DeGrave's request for a strip search was approved, and the same officer who conducted the pat-down search, conducted the strip search in a private room. (*Id.*, ¶¶ 45-46.) Neither DeGrave nor Gleason were present for the strip search. (*Id.*) It is undisputed that the strip search was conducted in a routine and perfunctory manner and did not uncover anything. (*Id.*, ¶ 48.) After the strip search was over, Jones went back to the kitchen and told the other inmates that Gleason "had them strip search me. She thought I was stealing something I guess." (*Id.*, ¶ 49.) Jones also states that when he went back to the kitchen after the search, Gleason "made a point of making eye contact with him and laughing at him as she walked by." (ECF No. 43, ¶ 27.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Jones claims that Gleason and DeGrave violated his Eighth Amendment rights when they harassed him by arranging for him to be strip-searched. Prison officials violate the Eighth Amendment when conducting strip searches only when the searches "are 'maliciously motivated, unrelated to institutional security, and hence totally without penological justification.'" *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004) (quoting

5

*Meriwether v. Faulkner*, 821 F.2d 408, 415 (7th Cir. 1987) (internal citations omitted)). To show that a strip search is conducted in a harassing manner, a plaintiff must present evidence of "conduct that could constitute 'harassment unrelated to prison needs.'" *Courtney v. Devore*, 595 F. App'x 618, 620 (7th Cir. 2014) (quoting *Hudson v. Palmer,* 468 U.S. 517, 530 (1984)). In other words, strip searches amount to Eighth Amendment violations "only if officers conduct themselves without justification 'in a harassing manner intended to humiliate and cause psychological pain.'" *Mathews v. Raemisch*, 513 F. App'x 605, 608 (7th Cir. 2013) (quoting *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009)).

Even when taking the facts in a light most favorable to Jones, DeGrave's and Gleason's actions were justified. It is undisputed that Jones refused to explain why he was limping. Given the fact that he was in the janitor's closet unsupervised, the closet contained many items that were prone to theft, and Jones left the closet limping, which in DeGrave's experience is a potential sign of hiding an object, suspecting Jones of hiding contraband was legitimate. And, having him both patted down and strip-searched was a reasonable response to that legitimate suspicion. Indeed, Jones even told his fellow inmates he was strip searched because Gleason thought he stole something.

Jones questions Gleason's and DeGrave's motives, pointing to his history with Gleason, Gleason's relationship with DeGrave, and Gleason laughing at him after the strip search concluded, and argues that this is evidence that Gleason and DeGrave orchestrated the search simply to harass him. However, as stated above, the case law is clear that the search must be intended *solely* to harass and *totally without* penological justification. Jones cannot overcome the fact that the undisputed evidence shows DeGrave was justified in requesting the search. Also, it was not DeGrave's sole decision to have Jones strip searched.

A captain or lieutenant had to consider DeGrave's request and determine whether a strip search was warranted. It is undisputed that is what occurred here.

Additionally, neither DeGrave nor Gleason were present or participated in the strip search, and it is undisputed that the search was conducted in a routine and uneventful manner. Typically, courts look to the manner in which the search was conducted as evidence that the search was intended to harass and humiliate rather than a justified search. *See Mays*, 575 F. 3d at 650 (holding that evidence that guards made demeaning comments while searching the inmate, purposely used dirty gloves, and kept the room very cold indicates the search was intended to harass.) The lack of such evidence here bolsters the defendants' contention that the search was conducted to ensure the safety and security of the institution and prevent contraband from entering the prison's general population.

"There is no question that strip searches may be unpleasant, humiliating, and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation." *Calhoun v. DeTella*, 319 F.3d 936, 939 (2003). At bottom, even considering Jones' assertion that his history and contentious relationship with Gleason and DeGrave played a role in their decision to secure a strip search, Gleason and DeGrave were justified in seeking a search. Jones was unsupervised in a janitor's closet which contained items prone to theft by inmates, emerged from the closet limping, and refused to explain his limp. In other words, without additional evidence indicating that the search was intended solely to humiliate or harass, Jones cannot defeat that there were penological reasons for the search. Accordingly, summary judgment is granted in favor of the defendants and the case is dismissed.

7

Case 2:20-cv-00746-NJ   Filed 01/05/22   Page 7 of 9   Document 53

The defendants also argued that they were entitled to qualified immunity. Because I have granted the defendants summary judgment on the merits, I need not address the qualified immunity argument.

### ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** the defendants' motion for summary judgment (ECF No. 33) is **GRANTED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case

Dated at Milwaukee, Wisconsin this 5th day of January, 2022.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge

9

Case 2:20-cv-00746-NJ   Filed 01/05/22   Page 9 of 9   Document 53